ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

FILED
SEP 26 2007
U.S. COURT OF FEDERAL CLAIMS

MANSON CONSTRUCTION CO.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 07-694 C

# APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff, Manson Construction Co., by and through the undersigned counsel, respectfully moves this Court for a Temporary Restraining Order preventing the Defendant, its officers, agents and employees, and all other persons active in concert or participation with them, from proceeding with the contract awarded under solicitation No. W9127N-07-R-0022 until further Order from this Court. The grounds for this Motion are set forth more fully in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

for [signature]

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Fort Washington, PA 19034
(215) 542-2777
(215) 542-2779/FAX
mhp@phslegal.com
Counsel of Record for
MANSON CONSTRUCTION CO.

Date: September 26, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| MANSON CONSTRUCTION CO., Plaintiff, | : | |
| v. | : | No. |
| THE UNITED STATES, Defendant. | : | |

TEMPORARY RESTRAINING ORDER

Upon consideration of Plaintiff's Application for a Temporary Restraining Order, the entire record herein, and the law applicable thereto, it is this day of , 2007, ORDERED, that the Defendant, its officers, agents, and employees, and all other persons in active concert or participation with them, are restrained from proceeding with the contract awarded under RFP No. W9127N-07-R-0022 as of the date of this Order, and then until further Order of this Court.

J.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| MANSON CONSTRUCTION CO., | : | |
| Plaintiff, | : | |
| v. | : | No. |
| THE UNITED STATES | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY JUDGMENT**

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777
215-542-2779(fax)

Attorney of Record for
MANSON CONSTRUCTION CO.

Of Counsel:
Joseph A, Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . 1

I. ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . 2

II. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 7

A. Jurisdiction and Standard of Review . . . . . . . . 7

B. The Defendant Did Not Evaluate the Plaintiff's Proposal In Accordance With the Advertised Source Selection Criteria . . . . . . . . . . . . . . . . . 10

C. There Was Not A Rational Basis For The Contracting Officer To Rate the Plaintiff's "Technical Project Work Plan" And "Management Plan" As Satisfactory Instead of Excellent . . . . . . . . . . . . . . . . 13

D. The Source Selection Failed To Reflect A Fair And Appropriate Technical And Price Tradeoff Sufficient To Justify An Award To A Higher Priced Offeror . . . . . . . . . . . . . . . . . . . . . 21

E. Criteria For Injunctive Relief . . . . . . . . . 23

F. Likelihood of Success on The Merits . . . . . . . 24

G. Plaintiff Will Suffer Irreparable Harm If Relief Is Not Granted . . . . . . . . . . . . . . . . . . 26

H. The Balance of Hardships Decidedly Favor Plaintiff . . . . . . . . . . . . . . . . . . . . . 27

I. Injunctive Relief Will Serve The Public Interest . . . . . . . . . . . . . . . . . . . . . 27

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

CASES PAGES

Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed.Cir.2000) . . . . . . . . . . . . . . . . 8

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367(Fed.Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 9,25

Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed.Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 8

Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed.Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CACI, Inc.-Federal v. U.S., 719 F2d 1567 (Fed. Cir. 1983) . 19,24

Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 ((Fed.Cir. 1996) . . . . . . . . . . . . . . . . . . . . 9,24,25

Grumman Data Sys. Corp., GSBCA No. 11635-P, 92-1 BCA 24,700 . 22

Hawaiian Dredging Constr. Co. v. United States, 59 Fed.Cl. 305, 316 (2004) . . . . . . . . . . . . . . . . . 10

Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed.Cir. 2001) . . . . . . . . . . . . . . 8

Isratex v. U.S., 25 Cl.Ct. 223 (1992) . . . . . . . . . . 16,26,27

Keco Indus., Inc. v. United States, 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203 (1974) . . . . . . . . . . . . . . . . . 9,16

Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C.Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Latecoere International, Inc. v. U.S. Department of the Navy, 19 F3d 1342, (C.A.11, 1994) . . . . . . . . . . . . . . . . . 19

Lockheed Missiles & Space Co., Inc. v. Bentsen, 4 F.3d 955, 958 (Fed.Cir.1993) . . . . . . . . . . . . . . . . . . . . . 22

Magellan Corp v. United States, 27 Fed. Cl. 446, (1993) . . . 24

Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed.Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . 9

**CASES** **PAGES**

Quality Transportation Services, Inc. v. United States, 12 Cl. Ct. 276 (1987) . . . . . . . . . . . . . . . . . . . 25,26

Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir.1996) . . . . . . . . . . . . . . . . . . . . . 24

TRW Environmental Safety Systems, Inc. v. United States, 16 Cl.Ct. 516 (1989) . . . . . . . . . . . . . . . . . . . 24

United Int'l Investigative Servs. v. United States, 41 Fed.Cl. 312, 318 (1998) . . . . . . . . . . . . . . . . . . . . . 9,27

Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 259 F.2d 921 (D.C. Cir. 1959) . . . . . . . . . . . . . . . . 23

Washington Metropolitan Area Transit Authority v. Holiday Inn, 559 F.2d 841 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . 23

**GAO DECISIONS**

Century Environmental Hygiene, Inc., 98-1 CPD 164 . . . . . . . 16

H.J. Group Ventures, Inc., B-246139, Feb. 19, 1992, 92-1 CPD ¶203 . . . . . . . . . . . . . . . . . . . . . . 10

Hydraulics Int'l Inc., 2000 CPD ¶149 . . . . . . . . . . . . . 22

OMSERV Corp., B-237691, 90-1 CPD 271 . . . . . . . . . . . . . 18

Sanford Cooling, B-242423, 91-1 CPD 376 . . . . . . . . . . . . 18

The Faxon Co., B-227835.3, B-227835.5, Nov. 2, 1987, 87-2 CPD ¶425 . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tidewater Homes Realty, 98-2 CPD ¶40, 1998 WL 469705 (1998) 22

Ultra Technology Corp., B-230309.6, 89-1 CPD 42 . . . . . . . . 18

Wackenhut Services, Inc., B-286037; B-286037.2, November 14, 2000, 2001 CPD ¶114 . . . . . . . . . . . . . . . . . . . . 21

Wright Tool Company, B-276416, 9701 CPD 210 . . . . . . . . . . 18

**STATUTES**

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES** **PAGES**

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . 7,8

10 U.S.C. 2305(a)(2)(A)(I) . . . . . . . . . . . . . . . . . . 16

10 U.S.C. § 2305(a)(3)(A) . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1491(b)(1) . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1491(b)(2) . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §1491(b)(3) . . . . . . . . . . . . . . . . . . . . 27

28 U.S.C. § 1491(b)(4) . . . . . . . . . . . . . . . . . . . . 8

41 U.S.C. § 253b(a) . . . . . . . . . . . . . . . . . . . . . 10

41 U.S.C. Sec. 253a(b)(1) . . . . . . . . . . . . . . . . . . 10

41 U.S.C. 253a(b)(1)(A) . . . . . . . . . . . . . . . . . . . 16

41 U.S.C. § 253a(c)(1)(B) . . . . . . . . . . . . . . . . . . 22

**REGULATIONS**

FAR, Part 14 . . . . . . . . . . . . . . . . . . . . . . . . 12

FAR, Part 15 . . . . . . . . . . . . . . . . . . . . . . . . 2,12

FAR 15.101(a) . . . . . . . . . . . . . . . . . . . . . . . 21

FAR 15.101(c) . . . . . . . . . . . . . . . . . . . . . . . 21

FAR 15.304(b)(2) . . . . . . . . . . . . . . . . . . . . . . 13

FAR § 15.304(c)(1) . . . . . . . . . . . . . . . . . . . . . 22

FAR 15.304(d) . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Acquisition Regulation §15.308 . . . . . . . . . . . 21

FAR 15.404-1(g)(1) . . . . . . . . . . . . . . . . . . . . . 18

FAR 15.404-1(g)(2) . . . . . . . . . . . . . . . . . . . . . 18

FAR 15.406 . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| MANSON CONSTRUCTION CO., Plaintiff, | : | |
| v. | : | No. |
| THE UNITED STATES, Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY JUDGMENT**

Plaintiff, Manson Construction Co., ("Manson"), challenges the best value source selection and award of a contract by the U.S. Army Corps of Engineers, Portland District ("Corps"), to Great Lakes Dredge & Dock. Co. ("GLDD") for the performance of dredging in the Columbia River. The Plaintiff requests the Court to enjoin the Corps from proceeding with performance of the project, to direct the Corps to rescind the award to GLDD, and to further direct the Corps to re-evaluate the proposals in accordance with the advertised source selection criteria, giving due credit to the Plaintiff for its lower price of approximately two million dollars.

## I. ISSUES PRESENTED

The issues in this case are (1) whether the Defendant evaluated the proposals in accordance with the advertised source selection criteria, (2) whether there was a rational basis for the Contracting Officer to rate the Plaintiff's "Technical Project Work Plan" and "Management Plan" as satisfactory, and (3) whether the source selection reflected a fair and appropriate technical and price tradeoff sufficient to justify an award to a higher priced offeror.

## II. STATEMENT OF THE CASE

This matter concerns the award of a contract to GLDD for a project entitled "Columbia River Channel Improvement Project (CRCIP) Phase III Dredging." The project required new work dredging for the improvement of the Columbia River from River Mile 67+00 to approximately River Mile 91+00, with the disposal of the dredged material in either designated in-water flow lanes or upland disposal sites made available by the Corps of Engineers.

The solicitation was to be conducted in accordance with the best value source selection procedures specified in FAR, Part 15, and proposals were to be evaluated under two general categories - "Technical" and "Price." These two categories were to have been given equal weight in the source selection process, meaning that all of the technical evaluation factors would account for fifty

percent of the evaluation, and price would account for the other fifty percent. The technical evaluation was divided into three technical factors - Technical Project Work Plan, Performance Risk, and Management Plan - and each of these three factors included a number of subfactors, as well. The solicitation provided that the three principal technical evaluation factors were of equal weight, and that each subfactor within a technical factor was of equal weight.

The evaluation of the Plaintiff's proposal was not conducted in a fair and appropriate manner and the tradeoff between its technical proposal and lower price was flawed. Although the Defendant assigned a rating of "Excellent" to the Plaintiff on the Performance Risk factor, acknowledging that the Plaintiff had "great performance ratings," the Defendant rated the Plaintiff's Technical Project Work Plan and Management Plan as "Satisfactory." The "Satisfactory" ratings were arbitrary and capricious in that they were not based upon the advertised source selection criteria, and they placed exaggerated importance on relatively minor aspects of the technical rating scheme.

In the case of the Technical Project Work Plan, a general comment was made that the plan was "well written," but that it lacked specificity. There was no indication of how this purported lack of specificity affected the Defendant's overall understanding or analysis of the Plaintiff's technical proposal,

nor was there any indication of where greater specificity was required. In fact, the Defendant only offered one comment regarding one of the eight subfactors, "Disposal Plan," which was adequately addressed by the Plaintiff in response to a request for additional information. Since the Defendant had the opportunity to request additional and more specific information after the receipt of proposals, and did so in the case of the "Disposal Plan," it is logical to conclude that specific additional information was not required with regard to any of the other subfactors. This observation is further supported by the fact that no comments addressing perceived weaknesses or deficiencies were offered by the Defendant with regard to the other seven Technical Project Work Plan subfactors and, in fact, some of the "strengths" noted in the debriefing related to the other factors.

The Management Plan was criticized because the "management staff was thin," consisting of only six people to manage the entire project. First of all, it seems somewhat disingenuous for the Defendant to have appropriately credited the Plaintiff for its excellent past performance and to have acknowledged its low risk of failure while, at the same time, questioning its plan to manage the project. Aside from the fact that the Plaintiff actually proposed eight people on its management staff, not six, there was nothing in the advertised source selection criteria

that indicated that the size of the management staff would be an evaluation factor. In addition, of the six subfactors to the Management Plan, all of which simply asked for information about the qualifications of different categories of management personnel, only the "surveyors" were addressed at the debriefing.

Surveyors are not typically considered to be management staff on dredging projects and the specifications, moreover, contained no criteria for the expertise of the surveyors an offeror intended to employ on the project. The only management positions identified in the specifications that were to have hydrographic surveying qualifications were the individuals proposed for quality control positions, and the Plaintiff clearly identified the members of its quality control staff that complied with the requirement of knowledge of hydrographic surveying. Defendant's reliance on what appears to be a relatively minor element of the Management Plan as a discriminator in rating the offerors should not be condoned by the Court.

At the debriefing, the Defendant also referred to the lack of information about the "Shore Crew Superintendent." However, the "Shore Crew Superintendent" had not been included as a factor in the evaluation criteria for award. Any use of the information, or lack of information, concerning the "Shore Crew Superintendent" in the source selection process was clearly inconsistent with the criteria stated in the solicitation.

The debriefing also addressed two alleged weaknesses or deficiencies in the Plaintiff's price proposal. One of the noted deficiencies involved the failure of the Plaintiff to submit a breakdown of its mobilization and demobilization ("mob/demob") costs. However, when Defendant had requested clarifications, it specifically notified Plaintiff of this oversight, and Plaintiff provided a detailed cost breakdown of its mobilization and demobilization proposed prices. This additional information fully addressed the agency's question and provided the information, before the source selection was made, that the agency needed to fully understand the Plaintiff's price proposal.

The other noted deficiency that related to the Plaintiff's price proposals on two line items that the agency contended were "too low" and "materially unbalanced." In order for a bid price to be materially unbalanced, it must first be mathematically unbalanced. Mathematical unbalancing occurs where certain line item prices are unusually low and others are correspondingly high. In the case at hand, there were no unusually low and unusually high prices to suggest mathematical unbalancing and material unbalancing, therefore, is not an issue. The suggestion, in the context of a stated deficiency, that the Plaintiff's bid may have been materially unbalanced was not supported by the facts and lacked a rational basis.

Accordingly, there was no rational basis for the source selection authority to conclude that the Plaintiff, who was rated as "Excellent" under "Performance Risk," and who unfairly received a downgraded rating of "Satisfactory" on the factors entitled "Technical Project Work Plan" and "Management Plan," was not the best value. The Plaintiff's technical proposal was either equal or superior to that submitted by GLDD and its lower price of approximately two million dollars should have been the discriminator in making the source selection.

## III. ARGUMENT

### A. Jurisdiction And Standard of Review

Pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1), the United States Court of Federal Claims has jurisdiction over post-award bid protest cases. The Tucker Act grants the Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Tucker Act further permits the Court to "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2).

Pursuant to the Tucker Act, the Court of Federal Claims reviews the challenged agency action under the Administrative Procedure Act ("APA") standards set forth in 5 U.S.C. § 706. 28

U.S.C. § 1491(b)(4); see also Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed.Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A)...."). Under the APA standards, an agency action will be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), In other words, "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed.Cir. 2001).

"The arbitrary and capricious standard ... is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed.Cir.2000). If an award is challenged on the ground that the procurement official's decision lacked a rational basis, the Court must determine whether the agency provided a "coherent and reasonable explanation of its exercise of discretion," Impresa Construzioni, 238 F.3d at 1333. When the plaintiff challenges the solicitation on the ground that it was in violation of regulation or procedure, the plaintiff must show

a "clear and prejudicial violation of applicable statutes or regulations." Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C.Cir. 1973)).

In determining whether the agency decision was arbitrary or capricious, the Court must evaluate four factors: whether "(1) there was subjective bad faith on the part of the procuring officials; (2) there was a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; and (4) pertinent statutes or regulations were violated." United Int'l Investigative Servs. v. United States, 41 Fed.Cl. 312, 318 (1998). See also Keco Indus., Inc. v. United States, 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203 (1974)). There is, however, no "requirement or implication ... that each of the factors must be present in order to establish arbitrary and capricious action by the government." Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed.Cir.1988).

In order to overturn the agency decision, plaintiff bears the burden of showing "a significant, prejudicial error in the procurement process." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.Cir. 1999). In order to show it was significantly prejudiced, plaintiff does not have to show that, but for the error, plaintiff would have been awarded the contract. Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir. 1996). However, the plaintiff must show that there was

a 'substantial chance' it would have received the contract award" absent the challenged agency action. Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed.Cir. 2005). Where plaintiff demonstrates that the contracting officer's rationale for rejecting the bid was unreasonable and that plaintiff was prejudiced as a result of the rejection, "the contracting officer's decision will not stand." Hawaiian Dredging Constr. Co. v. United States, 59 Fed.Cl. 305, 316 (2004).

**B. The Defendant Did Not Evaluate the Plaintiff's Proposal In Accordance With the Advertised Source Selection Criteria**

It is fundamental that offerors in a negotiated procurement must be informed of the criteria against which their proposals will be judged. 41 U.S.C. § 253b(a); The Faxon Co., B-227835.3, B-227835.5, Nov. 2, 1987, 87-2 CPD ¶425 at 4. In particular, contracting agencies are required by the Competition in Contracting Act of 1984 (CICA) to set forth in the solicitation, at a minimum, all significant evaluation factors that the agency expects to consider and their relative importance. 41 U.S.C. Sec. 253a(b)(1); H.J. Group Ventures, Inc., B-246139, Feb. 19, 1992, 92-1 CPD ¶203.

Here, the agency expressly stated that proposals would be evaluated on the basis of "technical and price" and that the two were equal in weight. In addition, the solicitation stated that

the three technical factors were of equal weight, and that the underlying subfactors were of equal weight. As explained below, the agency actually assigned greater weight to some factors and subfactors than others, and reserved for itself the right to subjectively pick and choose those factors to rely upon in downgrading the rating of the Plaintiff. In doing so, the agency acted in an arbitrary and capricious manner and contradicted the advertised evaluation scheme.

The "technical" aspect of the evaluation did not involve an evaluation of the technical approach to performing the dredging, but simply consisted of a listing of factors and subfactors in three broad categories - Technical Project Work Plan, Performance Risk, and Management Plan. No factor, or subfactor, was deemed to be any more important than another according to the advertised evaluation scheme.

As to the "Technical Project Work Plan," the solicitation stated that the "proposals would be rated on the offeror's proposed project work plan to determine if it is consistent with the scope of work required by this RFP, and on the suitability and condition of equipment for dredging and disposal." The scope of work essentially involved the excavation of material from a twenty-four mile length of the navigable channel in the Columbia River in order to deepen the channel to accommodate deeper draft vessels. This sort of dredging is known in the industry as "new

work" dredging and involves the excavation of material that has not been previously dredged.

The performance of "new work" dredging is dominated by four or five large business dredging companies in the United States, including the Plaintiff and GLDD, all of whom are experienced and capable dredging contractors. Although this solicitation was issued under the procedures specified in FAR, Part 15, Contracting by Negotiation, "new work" dredging is usually procured through the procedures specified in FAR, Part 14, Sealed Bidding, and the competition is usually limited to price, and price alone. The reason that dredging is usually procured by sealed bidding is that, in reality, dredging contractors use similar methods to excavate material and there is little to differentiate the technical approach of one contractor from another. While the contractors differ in the equipment they own and in their production capabilities, those differences are reflected by their prices for doing the work.

The Plaintiff is not attempting to challenge the procurement method employed by the Corps of Engineers and recognizes that such a protest would be untimely in any event. It is the evaluation itself, and the failure of the Defendant to justify the lower rating of "Satisfactory" in two of the three principal technical evaluation factors, that is properly the subject of this protest. Because of the inherent subjectivity in the

evaluation process, an evaluation that results in the rejection of the lowest price should be supported by a rational basis for a lower rating. Not only did the Defendant fail to provide such a rational basis for its conclusions, but an examination of the evaluation factors enumerated in the solicitation reveals very few areas where qualitative differences between the offers could be determined.

FAR 15.304(b)(2) provides that evaluation factors must "support meaningful comparison and discrimination between and among competing proposals." In the case at hand the evaluation was conducted in so subjective a manner that it provided no indication of the comparative performance capabilities of the competing offerors. In fact, it appears that the Contracting Officer decided to select GLDD, even though its evaluated price was higher, and then distorted the significance of a couple of minor purported shortcomings in the Plaintiff's proposal to attempt to justify a downgrading of the Plaintiff's technical rating. This was done simply to support the preconceived end result.

### C. There Was Not A Rational Basis For The Contracting Officer To Rate the Plaintiff's "Technical Project Work Plan" And "Management Plan" As Satisfactory Instead of Excellent

An examination of the stated reasons for the downgrading of the Plaintiff's project work plan and management plan yields very

little, if any, support for the Contracting Officer's ultimate rating and demonstrates that the rating lacked a rational basis. As to the "Technical Project Work Plan," the information provided at the debriefing simply stated that the plan was "well written, but needed more specificity and often repeated the specs." No explanation of where the "well written" plan lacked specificity was provided, and of the eight subfactors only one, "Disposal Plan," was addressed as a possible weakness or deficiency. In addition, no subfactor other than the disposal plan was addressed in the Defendant's August 31, 2007, request for additional information.

The perceived weakness involving the disposal plan was fully addressed by the Plaintiff in its response on September 4, 2007. At that time, all Plaintiff knew was that the Corps of Engineers was concerned that Plaintiff's disposal plan contemplated placing more material into the Martin Bar upland disposal site than that site could accommodate.

The Contracting Officer appears to have completely ignored the fact that the Plaintiff's clarification had adequately addressed any legitimate concerns about its Disposal Plan. Plaintiff had corrected the impression that it intended to place two million cubic yards into a one million cubic yard disposal site, and indicated its reasonable plan to use alternative upland

sites in the event that it completed filling the Martin Bar site to its full capacity.

This question relating to only one of the eight subfactors under "Technical Project Work Plan" cannot rationally be found to justify a mere "Satisfactory" rating in light of the responses provided to the Corps' questions and the fact that the Contracting Officer concluded that the Plaintiff was "Excellent" as to its performance risk. The rating of "Satisfactory" also overlooked the excellent manner in which the Plaintiff addressed the other seven factors, some of which were noted as "strengths" in the debriefing, and none of which were questioned or challenged in any way.

As to the Management Plan, the debriefing revealed that the Defendant believed that the Plaintiff's management team was "thin" in that only six people would be managing the project. Aside from the fact that Plaintiff's proposal clearly stated that eight people would be managing the project, there is nothing in the advertised evaluation criteria to indicate that the size of the management team would be evaluated. In other words, the agency improperly placed emphasis on the size of the project management staff when the solicitation did not disclose such importance to the offerors. When the source selection decision is based upon an evaluation of the offeror's proposal that is inconsistent with the stated criteria such a decision cannot be

found to be reasonable. Century Environmental Hygiene, Inc., 98-1 CPD 164. Thus, the Corps' treatment of the Plaintiff's proposal was arbitrary and capricious.

Even if the size of the management team could somehow be determined to be covered by one of the Management Plan evaluation factors, which it was not, the Corps' reliance on this subfactor over other subfactors, would be deemed improper. If one factor or subfactor is to have predominance over others it must be disclosed to the offerors. Isratex v. U.S., 25 Cl.Ct. 223 (1992). The failure to make such a disclosure violates FAR 15.304(d) which provides that "All factors and significant subfactors that will affect contract award and their relative importance shall be stated clearly in the solicitation (10 U.S.C. 2305(a)(2)(A)(i) and 41 U.S.C. 253a(b)(1)(A))." In the instant case, the solicitation advised offerors that the non-price factors and subfactors were of equal weight. Therefore, no one subfactor was to predominant over another. The Corps' greater and repeated emphasis of the management team size as a basis for downgrading Plaintiff's proposal amply demonstrates that it gave more weight to this subfactor than other subfactors. The Corps' source selection decision therefore lacked a reasonable basis and amounted to arbitrary and capricious action. Keco Industries, Inc. v. U.S., 203 Ct.Cl. 566 (1974).

The Defendant also raised two significant weaknesses or deficiencies concerning the Plaintiff's Price Proposal in the debriefing. Defendant indicated that it considered the failure to submit a "Mob/Demob Cost Breakout" with the proposal to be a significant weakness or deficiency. However, when Defendant had requested clarifications, it specifically notified Plaintiff of this oversight, and Plaintiff provided a detailed cost breakdown of its mobilization and demobilization proposed prices. This breakdown was part of the price proposal, not part of the technical proposal, and Defendant had informed Plaintiff that the breakdown "will be used to assist in evaluation of your proposed prices." Since the missing cost breakdown was furnished through clarification, and therefore was part of the proposal, the Defendant's determination that the lack of a "Mob/Demob Cost Breakout" was a significant weakness or deficiency is without a rational basis.

Also during the debriefing, the Defendant notified the Plaintiff that it considered the "pricing on CLINS [Contract Line Item Numbers] 0003 and 0005 appeared materially unbalanced - far too low." Defendant listed this aspect of Plaintiff's price proposal as a significant weakness or deficiency. CLINS 0003 and 0005 were alternative bid items for limited quantities of material that, if awarded, would have changed the disposal of those quantities from upland to in-water. Plaintiff's price

proposal did contain lower prices for CLINS 0003 and 0005 based on the cost savings it estimated for disposing of the limited quantities of material in-water as opposed to upland.

Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more contract line items is significantly overstated (typically one or more other line items are underpriced). FAR 15.404-1(g)(1). For a proposal to be materially unbalanced, it must first be mathematically unbalanced and there must be reasonable doubt that acceptance of the proposal will result in the lowest overall cost to the government. Wright Tool Company, B-276416, 9701 CPD 210; OMSERV Corp., B-237691, 90-1 CPD 271. A proposal is mathematically unbalanced when it is based on nominal prices for some items and enhanced prices for other line items. Sanford Cooling, B-242423, 91-1 CPD 376. Comparison of a competitor's prices to another offeror's prices is not by itself sufficient to establish that a proposal is unbalanced. Ultra Technology Corp., B-230309.6, 89-1 CPD 42. In fact, the FAR provides that cost or price analysis techniques are to be used to determine if offers are unbalanced. FAR 15.404-1(g)(2).

In the instant case, Plaintiff's proposal did not contain nominal prices for some of the line items and enhanced prices for other line items. Plaintiff's price proposal, therefore, was not mathematically unbalanced. If a price

proposal is not mathematically unbalanced, it cannot be "materially unbalanced" as Defendant contends. Furthermore, application of the alternative line items resulted, in all cases, with Plaintiff's price being low. Therefore, the most rudimentary price analysis technique demonstrates that the risk the government would not pay the lowest price for the contract work if it awarded the contract to Plaintiff was non-existent. Defendant's contention that Plaintiff's proposal was "materially unbalanced" was arbitrary, capricious, and lacked a rational basis. It is yet another example of the Defendant's grasping at straws to conjure up a basis to downgrade the Plaintiff's technical rating.

When the solicitation informs offerors that all non-price factors and subfactors are of equal importance, the agency is bound to observe that system in its evaluation of offers. When the agency does not follow its evaluation criteria, it breaches an implied contractual duty to deal fairly with all offerors and has effectively denied the offerors an opportunity to have their proposals considered solely on the merits. CACI, Inc.-Federal v. U.S., 719 F2d 1567 (Fed. Cir. 1983). If one offeror is singled out in the evaluation for disparate treatment, then such disparate treatment may be indicative of bias against that offeror. Latecoere International, Inc. v. U.S. Department of the Navy, 19 F3d 1342, (C.A.11, 1994).

It should also be noted that although the solicitation states that the three principal factors are of equal importance, the "Performance Risk" factor would seem to overlap and dominate the other factors. It is difficult to conceive of an offeror who could be rated "Excellent" as to "Performance Risk" while failing to submit a proposal that exhibits similar excellence in its project work and management plans. Yet, that is precisely what the Contracting Officer concluded in the evaluation of the Plaintiff's proposal - that the Plaintiff was an "Excellent" performance risk with "great performance ratings," but only "Satisfactory" in its work plan and management plan.

Although the negotiated procurement process provides a great deal of flexibility to the government and, when applied properly and fairly, assures that the government will obtain the best value, it is a system that also provides an opportunity for subjective manipulation of the procurement process. The evaluation of offers should not be conducted in such a way as to allow source selection officials to arbitrarily deny equally qualified, lower priced offerors the awards they are entitled to receive based upon illusory or insignificant deficiencies in their proposals.

D. <u>The Source Selection Failed To Reflect A Fair And Appropriate Technical And Price Tradeoff Sufficient To Justify An Award To A Higher Priced Offeror</u>

FAR 15.101(a) provides that "A tradeoff process is appropriate when it may be in the best interest of the Government to consider award to other than the lowest priced offeror or other than the highest technically rated offeror..." The regulations go on to provide that "The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406." (FAR 15.101(c)). In the instant case, given the lack of a rational basis for the "Satisfactory" rating assigned to the Plaintiff, it would be reasonable to conclude that both offerors should have received identical ratings of "Excellent." Accordingly, a proper trade-off would have undoubtedly resulted in award to the Plaintiff in view of its significantly lower price.

Where a price/technical tradeoff is made, the source selection decision must be documented, and the documentation must include the rationale for any tradeoffs made, including the benefits associated with additional costs. Federal Acquisition Regulation §15.308; <u>Wackenhut Services, Inc.</u>, B-286037; B-286037.2, November 14, 2000, 2001 CPD ¶114. The agency offered no such explanation, or documentation, at the debriefing.

It is well-established that price must always be a factor in an agency's decision to award a contract. 10 U.S.C. § 2305(a)(3)(A); 41 U.S.C. § 253a(c)(1)(B); FAR § 15.304(c)(1). Moreover, an agency may not discount the importance of price in a price/technical tradeoff to such an extent that it "effectively renders the price factor meaningless." Lockheed Missiles & Space Co., Inc. v. Bentsen, 4 F.3d 955, 958 (Fed.Cir.1993) (citing Grumman Data Sys. Corp., GSBCA No. 11635-P, 92-1 BCA 24,700 at 123, 721). In other words, it is well-accepted that "[n]otwithstanding a solicitation's emphasis on technical merit, an agency may properly select a lower-priced, lower technically-rated proposal if it decides that the cost premium involved in selecting a higher-rated, higher-priced proposal is not justified, given the acceptable level of technical competence available at the lower price." Tidewater Homes Realty, 98-2 CPD ¶40, 1998 WL 469705 (1998); see also Hydraulics Int'l Inc., 2000 CPD ¶149. Here, technical and price were of equal weight and given the lack of a rational basis for the Plaintiff's downgraded rating of "Satisfactory," price should have been the discriminator in making the award.

While it is understood that best value procurement and the trade-off process allow for a certain amount of subjectivity in order to promote the exercise of discretion by source selection

officials, that subjectivity cannot be allowed to be applied in such a way that it facilitates arbitrary and capricious conduct.

E. Criteria For Injunctive Relief

In order to obtain temporary injunctive relief, the Plaintiff must demonstrate:

(1) substantial probability that the Plaintiff will prevail on the merits;

(2) irreparable harm to the Plaintiff unless the injunction is granted;

(3) absence of substantial harm to other interested parties; and

(4) absence of harm to the public interest.

Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 259 F.2d 921 (D.C. Cir. 1959). However, the evidence presented for each of these criteria is balanced by the court on a sliding scale basis. A much stronger showing on one or more of the necessary factors lessens the amount of proof required for the remaining factors. Washington Metropolitan Area Transit Authority v. Holiday Inn, 559 F.2d 841 (D.C. Cir. 1972).

The Plaintiff will address the four above enumerated factors in light of the facts and applicable cases. For the reasons set forth below, Plaintiff submits that it is entitled to the relief sought.

F. Likelihood of Success on The Merits

In considering whether to grant interim injunctive relief pending a final decision on the merits, the Court of Federal Claims has consistently held that the "likelihood of success" is a flexible factor and does not require a certain "mathematical probability." Magellan Corp v. United States, 27 Fed. Cl. 446, (1993); TRW Environmental Safety Systems, Inc. v. United States, 16 Cl.Ct. 516 (1989). For purposes of a preliminary injunction, it is sufficient if the plaintiff can demonstrate either (1) "a combination of probable success on the merits and the possibility of irreparable injury," or (2) "that serious questions are raised and the balance of hardships tips sharply in favor" of the plaintiff. Id. at 527. As demonstrated below, Plaintiff's request for preliminary injunctive relief meets these standards.

To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir.1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir.1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." Data General, 78 F.3d at 1582; see CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed.Cir.1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, " 'there was a

substantial chance that [it] would receive an award--that it was within the zone of active consideration.' ") (citation omitted). Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.Cir.), reh'g denied (1999) (citation omitted in original). In Data General Corporation v. Johnson, the Circuit Court wrote:

We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract.... The standard reflects a reasonable balance between the importance of (1) averting unwarranted interruptions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances. Data Gen. Corp. v. Johnson, 78 F.3d 1556; Quality Transportation Services, Inc. v. United States, 12 Cl. Ct. 276 (1987).

In the case at hand, where the only other offeror's price exceeded Plaintiff's by more than two million dollars, and where the government did not have a rational basis to downgrade Plaintiff's technical rating to Satisfactory, there is a reasonable likelihood that Plaintiff would have been awarded the contract and, therefore, was prejudiced by the agency's action.

There is a substantial probability that Plaintiff will prevail on the merits.

### G. Plaintiff Will Suffer Irreparable Harm If Relief Is Not Granted

The proposed contract is for a substantial amount, and Plaintiff will be deprived of its potential profit on the project if an injunction is not issued and if the Defendant is permitted to proceed. As this Court's predecessor stated in TRW, supra:

...plaintiff moving for preliminary injunction need only allege, in order to establish irreparable injury, that by failing to enjoin, it will not be awarded the contract and will lose profits thereunder; ...[This is] based upon the proposition that an unsuccessful bidder's damages are limited at law to bid preparation costs. (At p 529). See also Quality Transportation Services, Inc. v. United States, 12 Cl.Ct. 276, (1987) (irreparable harm is shown if a contract will not be awarded and the plaintiff would not earn the resulting profits) and Isratex, Inc. v. United States, 25 Cl.Ct. 223 (1992), (a plaintiff is irreparably damaged since an action at law allows plaintiff to recover only its bid preparation costs.) If an injunction is not issued, Plaintiff will be denied the benefit of a legally valid procurement process as well as fair consideration of its bid.

H. <u>The Balance of Hardships Decidedly Favor Plaintiff</u>

The Court must consider whether a preliminary injunction will substantially injure the other parties in the proceeding. As discussed above, if Plaintiff's request for injunctive relief is not granted, it will suffer the loss of a contract and the profits associated with it, which would far outweigh any potential harm to the Corps of Engineers or to GLDD. As noted in the Court's General Order No. 38, the "Court's practice is to expedite protest cases to the greatest practical extent," and Plaintiff is prepared to agree to an expedited schedule for resolving this matter. See 28 U.S.C. §1491(b)(3) ("[i]n exercising jurisdiction under this subsection, the courts shall give due regard to . . . the need for expeditious resolution of the action"). Given the Court's practice to expedite bid protests, it is unlikely that the Corps or GLDD will suffer irreparable injury during the pendency of this litigation.

I. <u>Injunctive Relief Will Serve The Public Interest</u>

It is a well-settled principle that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring the Government to follow its procurement statutes and regulations. See <u>United Int'l Investigative Services, Inc., v. U.S.</u>, 41 Fed. Cl. 312,323 (1998) holding that the "public has a strong interest in preserving the integrity of the procurement process"; <u>Isratex</u>, 25 Cl.Ct. at 231

(public interest served by requiring the government to "fairly and honestly" consider bids). This is important in this case, where continuance of the contract awarded to GLDD would contradict the expressly stated evaluation criteria in the solicitation. Issuance of an injunction will serve the public interest by protecting the integrity of the competitive procurement process.

IV. CONCLUSION

Plaintiff respectfully submits that the requested relief is urgently needed to maintain the status quo until the Court reaches a decision on the merits. Based on the foregoing facts and analysis, Plaintiff respectfully requests the Court to grant its motion.

Respectfully submitted,

DATED: September 26, 2007

for [signature]

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777
215-542-2779(fax)
mhp@phslegal.com

Attorney of Record for
MANSON CONSTRUCTION CO.

OF COUNSEL:
Joseph A. Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| MANSON CONSTRUCTION CO., Plaintiff, | : | |
| v. | : | No. |
| THE UNITED STATES, Defendant. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the Plaintiff's Complaint, Motion for Temporary Restraining Order, Preliminary Injunction, Memorandum of Points of Authorities in Support of Plaintiff's Motion, and the Certificate Required by Rule 65 were served by messenger on the date below upon:

U.S. Department of Justice
Commercial Litigation Branch
Civil Division, 8th Fl.
1100 "L" Street, N.W.
Washington, DC 20530

for Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777
215-542-2779 (fax)

Attorney of Record for
Manson Construction Co.

Date: September 26, 2007