# In the United States Court of Federal Claims

No. 07-694C

(Filed October 19, 2007) 1/

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **MANSON CONSTRUCTION CO.,** | * | Contracts; post-award bid |
| | * | protest; best-value negotiated |
| Plaintiff, | * | procurement; tradeoff analysis; |
| | * | prejudice. |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant, | * | |
| | * | |
| and | * | |
| | * | |
| **GREAT LAKES DREDGE & DOCK CO., LLC,** | * | |
| | * | |
| | * | |
| Intervenor-Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Michael H. Payne, Ft. Washington, PA, for plaintiff. Joseph A. Hackenbracht and Timothy A. Sullivan, Payne Hackenbracht & Sullivan, of counsel.

Ellen M. Lynch, Department of Justice, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. John Breiling, Senior Counsel, Office of Counsel, U.S. Army Corps of Engineers, Portland, OR, of counsel.

Daniel C. Sauls, Washington, DC, for intervenor-defendant Great Lakes Dredge & Dock Co., LLC. Thomas P. Barletta, Steptoe & Johnson, LLP, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

---

1/ This opinion originally was filed under seal on October 12, 2007. By ¶ 2 of the ordering language, the parties were requested to notify the court of any redactions. All redactions requested are denoted by brackets.

This post-award bid protest is before the court after argument on the parties' cross-motions for judgment on the administrative record. At the conclusion of argument on October 11, 2007, the court issued a bench ruling stating its findings of fact and conclusions of law pursuant to RCFC 52(a). This memorandum opinion and order memorializes those findings and conclusions.

## PROCEDURAL HISTORY

This post-award bid protest concerns Solicitation W9127N-07-R-0022, the Columbia River Channel Improvement Project ("CRCIP") Phase III Dredging ("the Solicitation"), issued July 24, 2007, and amended twice thereafter. The Administrative Record (the "AR") is the source of the relevant facts. The Army Corps of Engineers, Portland, Oregon Division (the "Corps"), sought to deepen a portion of the Columbia River from -40 feet to -43 feet by dredging the river bed. The Solicitation was structured as a best-value negotiated procurement; offerors were directed to submit their proposals by 2:00 p.m. on August 29, 2007.

Two companies submitted proposals in response to the Solicitation: Manson Construction Co. ("plaintiff") and Great Lakes Dredge and Dock Co., LLC ("GLDD"). On September 6, 2007, 2/ the Source Selection Authority (the "SSA"), Ralph Banse-Fay, issued his Source Selection Decision (the "SSD") directing award of the contract to GLDD. Notice of Award was sent to GLDD on September 10, 2007; Notice of Non-Award, including a Debriefing of Source Selection, was sent to plaintiff on the same date.

On September 26, 2007, plaintiff filed a complaint in the United States Court of Federal Claims alleging that the Corps did not follow its Evaluation Plan in three significant respects: first, that its evaluation of plaintiff's non-price proposal was arbitrary and capricious, Compl. filed Sept. 26, 2007, ¶¶ 27-31, 41-68; second, that its evaluation of plaintiff's price was inaccurate and arbitrary and capricious, Id. at ¶¶ 32-40; and, third, that it did not engage in a proper tradeoff analysis and should have awarded plaintiff the contract because plaintiff's proposal, although ranked lower than GLDD's proposal on non-price factors, was the lowest priced proposal by just over [ ], id. at ¶¶ 69.

---

2/ Plaintiff contended that the SSD was issued on August 30, 2007. Although the first page of the SSD bears the typed date "August 30, 2007," the signature of the SSA is stamped September 6, 2007. Based on the record, the court finds that the SSD was finalized on September 6, 2007.

On September 27, 2007, the court granted GLDD's unopposed motion to intervene under RCFC 24(a); noted plaintiff's withdrawal of its motion for a temporary restraining order; consolidated plaintiff's motion for a preliminary injunction with proceedings on the merits pursuant to RCFC 65(c); granted defendant's motion for a protective order; directed defendant to file the Administrative Record on October 1, 2007; directed the parties to file simultaneous cross-motions for judgment on the administrative record by October 5, 2007; and directed the parties to file their simultaneous oppositions and replies on October 9, 2007. Argument was held on October 11, 2007; the court had committed to issuing a decision by October 12, 2007. 3/

## DISCUSSION

### I. Standard of review

As it did in its bench ruling, the court incorporates by reference pages 9-14 of its slip opinion in Erinys Iraq Ltd. v. United States, No. 07-562C, 2007 WL 2714167 (Fed. Cl. Sep. 14, 2007), pertaining to standing, the standard of review of a bid protest to a best-value negotiated procurement, the standard of review for judgment on the administrative record, and the standards for obtaining injunctive relief.

### II. Success on the merits

Plaintiff has standing to pursue this action because it was an actual bidder in this solicitation and because its direct economic interest has been affected by the award of the contract. To demonstrate success on the merits, plaintiff must prove either that the Corps acted without a rational basis when it excluded plaintiff from the competitive range, or that the agency action constituted "a clear and prejudicial violation of the applicable statutes or regulations." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed. Cir. 2001). In addition, plaintiff must prove that the Corps's actions prejudiced plaintiff. "[I]f the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protestor was prejudiced by that conduct." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). "[T]he prejudice determination assesses whether an adjudged violation of law warrants setting aside of [defendant's determination]." Id. at 1357.

---

3/ This memorandum opinion and order incorporates the bench ruling and does not supersede it.

Plaintiff attacks the Solicitation on three major grounds. First, plaintiff argues that the Corps's evaluations of two of plaintiff's non-price evaluation factors, Technical Plan and Management Plan, were improper and arbitrary and capricious. Plaintiff next argues that the Corps improperly cited plaintiff's price as unbalanced and improperly failed to consider plaintiff's clarifications regarding its mobilization/demobilization cost breakdown in a manner that was arbitrary and capricious. Finally, plaintiff argues that the Corps did not engage in a proper tradeoff analysis and so should have awarded the contract to plaintiff because plaintiff's proposal, although ranked lower than GLDD's proposal on non-price factors, was the lowest priced proposal by just over [          ]. Plaintiff does not succeed in any of these arguments.

The court made findings with respect to each of the following arguments:

1. The Evaluation Plan and the composition of the Technical Evaluation Team

Plaintiff contends that the Corps's evaluation of non-price factors was fundamentally flawed because it did not follow the Evaluation Plan, AR Tab 6 at 542-551. In particular, plaintiff noted that the Evaluation Plan directed that the Technical Evaluation Team (the "TET") "will be comprised of" three listed individuals, two civil engineers and one civil engineer-in-training and two listed alternates, both civil engineer technicians. During the evaluation some of these members listed were shifted to the Price Evaluation Team in order to address an issue with the Independent Government Estimate. AR Tab 31 at 1026. The two participating members of the TET were Richard Dylan Davis, one of the originally listed civil engineers, and Elizabeth Smock, one of the civil engineer technicians originally listed as an alternate. See AR Tab 6 at 542.

The Evaluation Plan, however, was an internal document and marked "Procurement Sensitive" and "FOR OFFICIAL USE ONLY" at the bottom of each page. See id. at 542-551. Internal agency documents that are not distributed as part of a solicitation do not themselves confer rights to potential offerors. See Lincoln Servs. Ltd. v. United States, 678 F.2d 157, 163-166 (Ct. Cl. 1982); see also In re Delta Dental of California, B-296307, 2005 C.P.D. ¶ 152, 2005 WL 1994327 (GAO Jul. 28, 2005); In re DTH Mgmt. JV, B-283239, 99-2 C.P.D. ¶ 68, 1999 WL 828064 (GAO Oct. 6, 1999). During argument plaintiff conceded that the Evaluation Plan was not distributed to potential offerors as part of the Solicitation, that plaintiff did not see the Evaluation Plan until the filing of the administrative record under seal, and that the Evaluation Plan was not incorporated into the Solicitation. The Evaluation Plan was an internal guide to assist the Corps in organizing the Solicitation, and the AR reflects that the SSD was prepared in accordance to the terms of the Solicitation. See AR Tab 31 at 1024-30.

2. "Disposal Plan for Dredged Material" sub-factor

Plaintiff charges that the Corps did not evaluate properly plaintiff's proposal in connection with the "Disposal Plan for Dredged Material" sub-factor of the Technical Plan. Plaintiff proposed to use [ ] of seven possible upland disposal sites for dredged material. Plaintiff argues that the Corps improperly reduced plaintiff's rating on this sub-factor because the number of disposal sites did not constitute an evaluation factor. The record refutes this argument. The Solicitation included instructions to bidders outlining the operative evaluation factors. Regarding the "Disposal Plan for Dredged Material" sub-factor, the Corps would "evaluate how effectively and completely the plan discusses . . . . [u]pland disposal sites to be used and estimated quantity disposed in each (including in-water)." AR Tab 5 at 49. Consideration of the number of upland disposal sites in an offeror's proposal inheres in the terms of the evaluation criteria for this sub-factor. Plaintiff's arguments on the cost of diking upland sites notwithstanding, it was not arbitrary or capricious for the Corps to consider the number of sites in an offeror's proposal when considering "[u]pland disposal sites to be used." Id.

Plaintiff also asserts that the Corps improperly faulted plaintiff for proposing to dispose of over [ ] of material at the Martin Bar site, thereby failing to take into account its clarification that it was only proposing to dispose of approximately [ ] at that site. The Corps did take this clarification in to account. The SSD tradeoff analysis reflects the [ ] figure, AR Tab 31 at 1028. While an earlier narrative based on the TET's reports, id. at 1027, does cite a figure of 2 million cubic yards, it is derived from the TET's reports compiled on August 29, 2007; plaintiff provided clarifications via email on September 4, 2007. The SSD, signed September 6, 2007, reflects these clarifications. Plaintiff argues that the Corps misconstrued its proposal to haul dredged material as involving trucking, rather than its expressed plan to haul the material on a dredge. The Corps's assumption, however, was reasonable. Plaintiff planned on dumping material into in-water rehandling sites, then pumping the material out of the water using a pipeline dredge. AR Tab 14 at 622. A pipeline dredge is stationary platform and cannot haul material in the manner that a hopper dredge, a self-propelled vessel, could perform the operation.

3. Insufficiently descriptive plan that repeated the specification

Plaintiff argues that its proposal was sufficiently descriptive and did more than repeat the specifications; therefore, the Corps improperly reduced plaintiff's rating on non-price factors for lack of detail. The terms of the Solicitation explicitly demanded both detail and more than mere repetition. See AR Tab 6 at 52 ("Proposals submitted in response to this solicitation must include sufficient detailed data and plans to be evaluated under these criteria. Omitted and ambiguous data will result in proposals receiving lower scores."); id

("The proposal shall contain methods of approach to the services required and other information considered pertinent to meeting the requirements. The proposal shall not merely offer to perform the work in accordance with, or simply repeat, the specifications, but shall discuss the actual methods proposed as specifically as possible. Responses in the proposal shall reflect an understanding of the work environment, contract requirements, technical approaches, principles and techniques. Repeating or restating the specifications without sufficient elaboration will not be acceptable.").

Intervenor GLDD's brief includes a set of tables setting forth a number of instances where plaintiff substantially repeated the terms of the Solicitation. See GLDD's Br. filed Oct. 5, 2007, at app. 3-4. The AR reveals that GLDD also reiterated the specifications, but not to the extent that plaintiff recast them. Unarguably, GLDD's proposal included more detail. The SSD noted the repetition and the lack of detail in plaintiff's proposal, and it was proper for the SSA to consider both. AR Tab 31 at 1026-27.

4. Plaintiff's Management Plan

Plaintiff takes issue with the Corps's characterization of its Management Plan as [ ] AR Tab 31 at 1027, and lacking a [ ]. The evaluation criteria for the Management Plan did not require a specific number of management personnel, but did state that "Project Management plans will be evaluated for realism and flexibility." AR Tab 5 at 51. Plaintiff proposed a site management team of [ ]. AR Tab 14 at 635-36. Its proposal plan provided [ ] Id. at 636. Plaintiff estimated that the project would require [ ]. Id. at 639. [ ] Plaintiff argues that the TET chairman, Mr. Davis, noted that plaintiff provided "good rotation," but it misconstrues Mr. Davis's comments. Mr. Davis's comment pertained to the rotation of the professional engineers in the context of the Technical Plan, not the rotation of management personnel in the context of the Management Plan. Indeed, Mr. Davis specifically noted the [ ] See AR Tab 31 at 1028.

Plaintiff also argues that it improperly was faulted for not including a resume for the Shore Crew Superintendent position or for any Surveyor positions in its Management Plan because these were not evaluation criteria and because surveyors are usually not considered

management personnel in a dredging operation. The text of the Solicitation indicates otherwise, as offerors were directed to provide resumes for team members, including both the Shore Crew Superintendent and Surveyors. AR Tab 5 at 51.

5. Pricing evaluation

Plaintiff argues that it improperly was faulted for two aspects of its pricing proposal. First, plaintiff notes that, in the Corps's September 10, 2007 notice of non-award and debriefing letter, one of the listed "Significant Strengths and Weaknesses" was that plaintiff "[f]ailed to submit Mob[ilization]/Demob[ilization] Cost Breakout with proposal." AR Tab 38 at 1541. After plaintiff did not provide this information initially, its clarification email dated September 4, 2007, gave the breakdown. Second, plaintiff argues that its pricing for Contract Line Item Numbers 0003 and 0005 was not materially unbalanced because the prices were not mathematically unbalanced, and so it was improper for the SSD to consider its prices unbalanced. Neither of these factors was prejudicial. In respect to both issues, plaintiff's price was accepted by the SSA and considered as given, not rejected outright. Because neither issue affected the SSA's decision to accept the prices, it could not have prejudiced plaintiff. See AR Tab 31 at 1028 (reflecting plaintiff's proposed price of [ ].

6. Award without negotiations was proper

Plaintiff also argues that it was improper for the Corps to award the contract in a best-value negotiated procurement without engaging in post-offer, pre-award negotiations. Plaintiff notes that the SSA's narrative regarding negotiations in the SSD ¶ 9, AR Tab 31 at 1028, reflects a misunderstanding of negotiated procurement. The terms of the Solicitation, however, announced that the Corps contemplated award without negotiations. The Solicitation incorporated 48 C.F.R. (FAR) § 52.215-1 (2006), AR Tab 5 at 48, of which the relevant portion reads: "The Government intends to evaluate proposals and award a contract without discussions with offerors." FAR 52-215-1(f)(4). The Corps never intended to conduct negotiations prior to award and was under no obligation to do so.

Based on the above findings, plaintiff has failed to prove the merits of its case.

III. Other factors required for injunctive relief

In addition to (1) success on the merits, injunctive relief requires a protestor to demonstrate that (2) it will suffer irreparable harm if injunctive relief is not granted; (3) the harm to plaintiff if an injunction is not granted outweighs the harm to the Government if an injunction is granted; and (4) the injunction is not against the public interest. PGBA, LLC

v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). This is a case in which success on the merits was the definitive factor in determining plaintiff's entitlement to an injunction. The bench ruling explained that, coupled with failing to prove the merits of its case, plaintiff could satisfy only one of the other three factors for injunctive relief.

## CONCLUSION

Accordingly, based on the foregoing,

1. Defendant and intervenor's cross-motions are granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment for defendant and intervenor.

2. By October 19, 2007, the parties shall identify by brackets any material subject to redaction before the opinion issues for publication.

**IT IS SO ORDERED.**

s/ Christine O.C. Miller

______________________________

**Christine Odell Cook Miller**
Judge